Eastern District of Kentucky
**FILED**

JUL 1 8 2006

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

TO BE PUBLISHED IN F.SUPP.2d

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CONSOLIDATED
CIVIL ACTION NO. 2005-96 (WOB)

CALVIN SICKLES                                          PLAINTIFF

VS.

CAMPBELL COUNTY, KENTUCKY                               DEFENDANT

      <u>AND</u>

CIVIL ACTION NO. 2005-102

CHERYL LIGHTFOOT, ET AL                                 PLAINTIFFS

VS.

CAMPBELL COUNTY, KENTUCKY                               DEFENDANT

      <u>AND</u>

CIVIL ACTION NO. 2005-110

ARETTA BAUGHN                                           PLAINTIFF

VS.

KENTON COUNTY, KENTUCKY                                 DEFENDANT

## <u>OPINION AND ORDER</u>

### <u>Introduction</u>

This matter came before the court for oral argument on Wednesday, July 5, 2006.  Plaintiffs were represented by Robert

1

Newman and Steve Felson.  Defendant Campbell County was represented by Jeffrey Mando and Defendant Kenton County was represented by Jason Reed and Brandon Voelker.   Official Court Reporter Joan Averdick recorded the proceedings.

Before the court are three consolidated cases involving 42 U.S.C. § 1983 actions that challenge the fees imposed on prisoners in local county jails to defray the cost of their booking and incarceration.   In particular, the plaintiffs challenge the deduction of part of these fees from inmate canteen accounts.  Some of the plaintiffs are inmates or former inmates and some plaintiffs are relatives or friends of inmates.   These non-inmates have deposited money in the inmate accounts for the benefit of the prisoners.   The defendants are two Northern Kentucky counties (Campbell and Kenton) which, through various procedures, deduct funds from the inmate accounts and apply them to any fees owing. Plaintiffs do not challenge the validity of the statute authorizing these fees and procedures.   Rather, they claim that the methods used to deduct funds from the accounts violate due process.

The parties agree there are no issues of fact, all facts being before the court by deposition, affidavit or stipulation.   The cases are ripe for disposition on cross-motions for summary judgment.

The court, having carefully considered the issues, holds that the plaintiffs' claims have no merit and the defendants' motions

2

for summary judgment must be granted in their entirety and the complaints dismissed.

## Facts

Following discovery, it appears that the following facts are not in dispute.

In Campbell County, money can be put into an inmate's account by depositing money found on a prisoner on booking, by a money order from someone outside the jail or through a company that puts the transaction on the non-inmate's credit card and then mails a check to the jail. (Castle depo., pp. 4-6, 12-13). If a money order is mailed, it is then given to the inmate for endorsement. Once endorsed, it is posted to the inmate's account. (Castle depo., p. 5). A money order may also be dropped off to the visitation clerk. The same procedure is followed: the inmate endorses the money order and the amount is credited to the inmate's account. An inmate may refuse to endorse a money order. In such a case, it is returned to the person who brought it or mailed it in. (Castle depo., pp. 7-8; Lightfoot, plaintiff's memo in opposition #37, pp. 3-4). When money is deposited into a prisoner's account, the jail then deducts 25% of the amount deposited. If the inmate has a debt, the jail continues to deduct 25%, on a daily basis, from the inmate's account.

Defendants state and plaintiffs do not dispute that the

Campbell County Jail ensures that inmates are aware of the per diem fees and that funds will be deducted to pay per diem charges. (Lightfoot depo., pp. 20-21, 28-29; Castle depo. II, pp. 12-13; Hensley stipulation, ¶ 14). Inmates are also made aware of grievance procedures and that, if there have been errors in the imposition of fees, they may file a grievance to rectify the matter. (Daley depo., pp. 43-44, 46-49; Lightfoot, defendants' memo in support #41, p. 13). The Campbell county prisoners also challenge the $30.00 booking fee that is assessed at the time the arrestee is brought to the jail.

The procedure is similar in Kenton County. Kenton County also accepts money orders from others sending money to inmates. The money order is deposited into a general account and then credited to the inmate's account. (Kimberly Roberts depo., pp. 16-17, 23-24; Baughn, memo in support #21). However, there is nothing indicating that the inmate endorses the money order. Kenton County then deducts 50% from the prisoner's account. In Kenton County, this deduction is made on a weekly basis.

Defendants point to testimony of plaintiff, Mrs. Baughn, that is not opposed by the plaintiffs, that Mrs. Baughn was familiar with and aware of the policy of the Kenton County Jail to deduct a percentage from the inmate's account. (Baughn depo., p. 16).

It should be noted that a prisoner's account is not completely depleted in that only a percentage of the deposits are deducted,

4

always leaving funds available to make purchases from the canteen. The balances in the accounts are usually very modest, seldom exceeding $50.00.

## Analysis

It is important to note that all fees are authorized by KRS 441.265, which provides in its entirety:

**Required reimbursement by prisoner of costs of confinement – Local policy of fee and expense rates – Billing and collection methods.**

(1) A prisoner in a county jail shall be required by the sentencing court to reimburse the county for expenses incurred by reason of the prisoner's confinement as set out in this section, except for good cause shown.

(2) (a) The jailer may adopt, with the approval of the county's governing body, a prisoner fee and expense reimbursement policy, which may include, but not be limited to, the following:

    1. An administrative processing or booking fee;

    2. A per diem for room and board of not more than fifty dollars ($50) per day or the actual per diem cost, whichever is less, for the entire period of time the prisoner is confined to the jail;

    3. Actual charges for medical and dental treatment; and

    4. Reimbursement for county property damaged or any injury caused by the prisoner while confined to the jail.

  (b) Rates charged may be adjusted in accordance with the fee and expense reimbursement policy based upon the ability of the prisoner confined to the jail to pay, giving consideration to any legal obligation of the prisoner to support a spouse, minor children, or other dependents. The prisoner's interest in any jointly owned property and the income, assets, earnings, or other property owned by the prisoner's spouse or family shall not be used to determine a prisoner's ability to pay.

(3) The jailer or his designee may bill and attempt to

5

collect any amount owed which remains unpaid. The
governing body of the county may, upon the advice of the
jailer, contract with one (1) or more public agencies or
private vendors to perform this billing and collection.
Within twelve (12) months after the date of the
prisoner's release from confinement, the county attorney,
jailer, or the jailer's designee, may file a civil action
to seek reimbursement from that prisoner for any amount
owed which remains unpaid.

(4) Any fees or reimbursement received under this section
shall be forwarded to the county treasurer for placement
in the jail's budget.

(5) The governing body of the county may require a prisoner
who is confined in the county jail to pay a reasonable
fee, not exceeding actual cost, for any medical treatment
or service received by the prisoner. However, no
prisoner confined in the jail shall be denied any
necessary medical care because of inability to pay.

(6) Payment of any required fees may be automatically
deducted from the prisoner's property or canteen account.
If the prisoner has no funds in his account, a deduction
may be made creating a negative balance. If funds become
available or if the prisoner reenters the jail at a later
date, the fees may be deducted from the prisoner's
property or canteen account.

(7) Prior to the prisoner's release, the jailer or his
designee may work with the confined prisoner to create a
reimbursement plan to be implemented upon the prisoner's
release. At the end of the prisoner's incarceration, the
prisoner shall be presented with a billing statement
produced by the jailer or designee. After the prisoner's
release, the jailer or his designee may, after
negotiation with the prisoner, release the prisoner from
all or part of the prisoner's repayment obligation if the
jailer believes that the prisoner will be unable to pay
the full amount due.

(8) No per diem shall be charged to any prisoner who is
required to pay a work release fee pursuant to KRS
439.179, a prisoner that has been ordered to pay a
reimbursement fee by the court pursuant to KRS 534.045,
or that the Department of Corrections is financially
responsible for housing.

(9) No medical reimbursement, except that provided in KRS
441.045, shall be charged to any prisoner that the
Department of Corrections is financially responsible for
housing.

6

It is significant that plaintiffs make no attack on the validity of this statute. It has been uniformly recognized that the imposition of such fees is valid, the state having the power to require reimbursement for the cost of prisoners' upkeep and other reasonable fees. See discussion below.

### 1. *Statutory Issues*

The plaintiffs raise only one issue of statutory interpretation. That is, they contend that KRS 441.265(1), <u>supra</u>, requires that no imposition of the fees be made until the prisoner is sentenced.

It is true that the statute is ambiguous in this respect. However, giving the statute a fair reading as a whole, the court does not agree with the plaintiffs' interpretation.

If subsection (6) of the statute (which permits the fees to be "automatically deducted from the prisoner's property or canteen account,") is to be given any meaning, imposition of the fees cannot be delayed until sentencing. If the prisoner is confined until sentencing, by that time substantial funds will have passed through the account. The prisoner can easily be certain that he has a zero balance at the time of sentencing. Many prisoners receive pretrial diversion or the charges are otherwise disposed of without any sentencing having occurred.

Further, KRS 441.005(3) defines "prisoner" for the purposes of

the fee statute as:

> (3)  "Prisoner" means any person confined in jail pursuant to
>      any code, ordinance, law, or statute of any unit of
>      government and who is:
>      (a)  *Charged with* or convicted of any offense; or
>      (b)  Held for extradition or as a material witness; or
>      (c)  *Confined for any other reason.*  (Emphasis added).

Therefore, the statutes contemplate imposition of the fees whether or not the inmate is ever sentenced.

Therefore, the court holds that the correct reading of the statute is that the fees may be imposed as soon as the prisoner is booked into the jail and may be periodically deducted from the prisoner's account as provided by local regulation.

The reason for the reference to the "sentencing court" in subparagraph (1) of the statute is to provide that that court may impose a judgment for any deficiency at sentencing which has not been defrayed by the automatic deduction.

### 2. Procedural Due Process

Plaintiffs argue that they (both inmates and non-inmates) are deprived of their procedural due process rights because they are not afforded a pre-deprivation hearing before the fees are assessed and deducted.

Under current practices, the fees are automatically imposed and a percentage deducted from the account.  However, prisoners may utilize the grievance procedure to claim any exemption, for example, that payment of the fees would impair their ability to pay family

8

support obligations.  *See* KRS 411.265(2)(b).

All parties agree that the general principles of *Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893 (1976), apply -- that is, the governmental entity depriving a person of property must conduct "an examination of the competing interests at stake," balancing the following: (1) the private interest affected by the official action; (2) the risk of error through the procedures used, as well as the probable value of additional procedural safeguards; and (3) the government's interest, including any fiscal and administrative burdens imposed by additional procedural requirements.  *See United States v. Real Property,* 52 F.3d 1416, 1419 (6th Cir. 1995).

Several decisions have addressed the application of these principles with regard to jail fees.

In *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410 (3d Cir. 2000), substantial fees and procedures similar to those imposed here were upheld.  This court agrees with *Tillman's* exhaustive discussion of due process and the many other issues raised therein.

In *Tillman,* an inmate challenged a booking fee and a $10.00 a day fee for housing costs.  *Id.* at 413.  *Tillman* recognized that "a number of states authorize charges against a prisoner's wages or inmate account.  Courts have consistently found that there is no constitutional impediment to deducting the cost of room and board from a prisoner's wages." *Id.* at 416.

9

Specifically in regard to post versus pre-deprivation hearings and finding that a post-deprivation hearing was adequate, *Tillman* held that:

> It is impractical to expect the prison to provide a pre-deprivation hearing under these circumstances. . . . The assessments and takings pursuant to the program involve routine matters of accounting, with a low risk of error. To the extent that mistakes such as erroneous assessments or incorrect takings might occur, they may be corrected through the prison grievance program without any undue burden on prisoners' rights.  On the other hand, to require pre-deprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the county's costs of incarcerating prisoners.

*Id.* at 422.

*Tillman* supports the instant defendants' position that the procedures available to the inmates in these cases are sufficient to satisfy due process.  Courts that have examined this issue have found that the availability of post-deprivation grievance procedures, such as are available in both Kenton and Campbell Counties, provide adequate procedural safeguards to protect the inmates' Fourteenth Amendment due process rights.

*Tillman* was followed by the Fourth Circuit in *Slade v. Hampton Roads Regional Jail,* 407 F.3d 243, 253-4 (4th Cir. 2005), the above-quoted language from *Tillman* being expressly adopted by that court. See also *Myers v. Klevenhagen*, 97 F.3d 91, 94-6 (5th Cir. 1996); *Walters v. Bass*, 304 F. Supp. 2d 802, 811 (E.D. Va. 2004); *Gardner v. Gomez*, 959 F.Supp. 1224, 1229 (C.D. L.A. 1997).

10

In *Browder v. Ankrom*, 2005 WL 1026045 (W.D. Ky.), Judge McKinley held that imposition of fees similar to those involved here did not even constitute a deprivation of property necessary to trigger a right to due process because the inmate received services (such as food, utilities and shelter) in return therefor. *Id.* at *5.

In so holding, the court relied on *Bailey v. Carter,* 2001 WL 845446 (6th Cir.).   This court agrees with Judge McKinley's discussion of *Bailey*:

> While the Sixth Circuit has not specifically applied the reasoning of *Bailey* to a state policy which assessed an inmate's account for the costs of his room and board, it takes no leap of logic to conclude that such a policy would fall within the same analytical framework.  In other words, inmates who are assessed a housing or per diem fee pursuant to a statute or policy are not "truly deprived of their property" because such monies are deducted in exchange for services rendered or goods provided. *Compare Christianson v. Clarke*, 147 F.3d 655 (8th Cir. 1988)(holding that there was no constitutional impediment to deducting the cost of room and board from a prisoner's wages).  Accordingly, the charging of a per diem for room and board is not in violation of an inmate's federally protected constitutional rights.

*Id.* at 6.[1]

This court holds that, whether or not there is a "deprivation" of property, no due process rights of the plaintiffs have been violated.

---

[1]*But see Allen v. Leis,* 154 F.Supp.2d 1240 (S.D. Ohio 2001), holding that the imposition of jail fees without a pre-deprivation hearing violates procedural due process.  The *Allen* court, however, did not have the benefit of the later cases cited above, which this court finds to be persuasive.

### 3. *First Amendment Issues*

Plaintiffs argue that they are deprived of first amendment substantive and liberty rights when a non-inmate contributes money to the prisoners' accounts and jail fees are charged against these funds. They contend that this somehow infringes the non-inmate's right of free speech or association. However, plaintiffs do not favor the court with any citation of applicable authority. Indeed, the closest case they cite is *Akers v. McGinnis,* 352 F.3d 1030 (6th Cir. 2003), which holds that first amendment freedoms of prison guards may be reasonably curtailed if there is a rational basis for doing so. *Id.* at 1038-9. This undercuts rather than supports plaintiffs' first amendment arguments, which the court finds to be without merit.

The non-inmate plaintiffs are perfectly able to visit the inmates or telephone and correspond with them. They can also contribute to the inmate accounts. The fact that reasonable legitimate charges are made against the accounts in no way infringes on any right of expression or association. [2]

---

[2] The court holds the Plaintiffs had standing to raise the claims discussed herein. Additional issues raised by the parties were a substantive due process claim and a claim that the plaintiffs failed to exhaust administrative remedies under the PLRA. The parties have not continued to pursue these claims. Therefore, the court determines that said claims have been abandoned.

## Conclusion

The problems plaintiffs encounter in this case are based on the fact that they can find no ground to attack the Kentucky statute authorizing the very fees the defendants charge herein.  Once the validity of this statute and the legitimacy of charging the fees is conceded, it seems apparent that the defendants must of necessity employ the means described herein if there is to be any realistic hope of collecting the fees from the vast majority of inmates.

Since the statute is valid, the inmate owes fees that begin to accrue immediately upon his or her being booked into the jail. Since once the inmate is there he or she undoubtedly owes the fees, the risk of erroneous collection is minuscule,  and a pre-collection hearing would be a useless exercise in all but a tiny fraction of cases.  If the inmate is eligible for an exemption, the subsequent right to file a grievance claiming such exemption affords adequate procedural due process.

Thus, applying the *Mathews v. Eldridge* factors:

(1)   The property interest is relatively small;

(2)   There is small risk of collecting unauthorized fees and additional procedural safeguards would be of little value; and

(3)   The government's interest in collecting the fees, thus helping to meet the increased burden of running modern jails, is great and the administration's burden imposed by any additional procedural requirements are great.

13

Therefore, the court being advised,

**IT IS ORDERED**, as follows:

1.  That in Civil Action No. 2005-96, *Sickles v. Campbell County:*

    a.  Plaintiff's motion to certify class **(Doc. #26)** be, and it is, hereby **denied as moot;**

    b.  Defendant Campbell County's motion for summary judgment **(Doc. #29)** be, and it is, hereby **granted;**

    c.  Defendant Campbell County's motion to hold class certification in abeyance **(Doc. #31)** be and it is, hereby **denied as moot;** and

    d.  Plaintiff's motion for summary judgment **(Doc. #37)** be and it is, hereby **denied.**

2.  That in Civil Action No. 2005-102, *Lightfoot, et al v. Campbell County:*

    a.  Defendant Campbell County's motion for summary judgment **(Doc. #29)** be and it is, hereby **granted;**

    b.  Plaintiffs' motion for class certification **(Doc. #31)** be, and it is, hereby **denied as moot;**

    c.  Defendant Campbell County's motion to hold class certification in abeyance **(Doc. #32)** be, and it is, hereby **denied as moot;**

    d.  Plaintiffs' motion for summary judgment **(Doc. #38)** be, and it is, hereby **denied;**

    e.  Plaintiffs' motion to certify class II - as to Plaintiff Chad Hensley - **(Doc. #43)** be, and it is, hereby **denied as moot;** and

    f.  Defendant Campbell County's motion to hold in abeyance plaintiffs' motion for class certification **(Doc. #45)** be, and it is, hereby **denied as moot.**

14

3.   That in Civil Action No. 2005-110, *Baughn v. Kenton County*:

    a.   Defendant Kenton County's motion for summary judgment **(Doc. #20)** be, and it is, hereby **granted;**

    b.   Plaintiff's motion for summary judgment **(Doc. #24)** be, and it is, hereby **granted;**

    c.   Plaintiff's motion to certify class **(Doc. #31)** be, and it is, hereby **denied as moot**; and

    d.   Defendant Kenton County's motion to hold in abeyance plaintiff's motion for class certification **(Doc. #33)** be, and it is, hereby **denied as moot.**

4.   A separate Judgment will be entered concurrently herewith.

This _18th_ day of July, 2006.

WILLIAM O. BERTELSMAN, JUDGE

15